## WOOD v. UNITED STATES FIDELITY & GUARANTY CO.

### (District Court, D. Massachusetts. July 29, 1905.)

### No. 1,651.

1. INDEMNITY—CONTRACT—CONSTRUCTION.

   Where an agreement indemnifying a contractor's surety provided that, in the event of the contractor's being unable to complete the contract, the contractor thereby assigned such "plant" as the contractor then owned or had upon the work to the surety, the term "plant" was sufficient to include lumber and other materials intended for use in the building in process of erection, together with horses, carts, and harnesses used in connection with the work.

2. BANKRUPTCY—CREDITORS—UNLIQUIDATED DEMANDS.

   Where an agreement indemnifying a contractor's surety assigned to the latter all the contractor's plant in the event of the contractor's being unable to complete the contract, and the contractor subsequently abandoned the contract, and was declared a bankrupt, the surety became a creditor of the bankrupt from the date of the latter's abandonment of the contract, within Bankr. Act July 1, 1898, § 60, 30 Stat. 562, c. 541 [U. S. Comp. St. 1901, p. 3445], providing for the avoidance of preferences to creditors, though the amount of the surety's claim depended on contingencies, and was not liquidated.

3. SAME—AMOUNT OF CLAIM—DETERMINATION.

   Where an agreement indemnifying a contractor's surety, containing an assignment of the contractor's plant on the work in case the contractor should be unable to carry out the contract, was executed more than four months before the contractor became a bankrupt, and when he was solvent, the amount of the surety's claim against the bankrupt was not the amount that the latter might have paid by reason of its liability on the

bonds, independent from the plant so assigned, but was the amount of the loss it might sustain in completing the contract, with such aid as it might gain by taking and using the plant so assigned.

**4. SAME—PREFERENCES.**

Where a contractor, more than four months before becoming a bankrupt, and while solvent, executed an agreement indemnifying his surety, containing an assignment of the contractor's plant in case he should be unable to complete the contract, the exercise of the right thereby acquired by the surety within four months of the bankruptcy proceedings, and with knowledge that the contractor was then insolvent, did not constitute a preference in its favor.

**5. INDEMNITY—CONTRACT—CONSTRUCTION.**

A contractor's indemnity agreement provided that if the contractor was unable to complete the contract, he assigned to the surety such plant as the contractor owned or might have upon the work. *Held*, that the surety's right to the property depended on the facts existing when the right was given, and not on the facts existing when possession was taken, and hence it was immaterial that the property taken by the surety was acquired by the contractor after the execution of the indemnity agreement.

Leslie K. Storrs, for plaintiff.
Elder & Whitman, for defendant.

DODGE, District Judge.   The plaintiff is trustee in bankruptcy of Charles King, adjudicated a bankrupt January 25, 1904 on an involuntary petition against him in this Court, filed September 19, 1903.   He brings this suit to recover for certain building materials, horses, vehicles and harnesses taken by the defendant on or about August 26, 1903, at Diamond Island in Portland Harbor, Me.   It is alleged that the property taken was King's property at the time, and that it was taken under circumstances which made the taking a preference voidable by the trustee in bankruptcy under section 60a and 60b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]).   On December 13, 1904 the case was referred by consent to an auditor, upon whose report filed April 13, 1904, trial has now been had before the court without a jury.   The findings of the auditor are in great part undisputed, and his undisputed findings are sufficient for the decision of the case.   They will be referred to as occasion may require without restating them at length.

The following provisions of the indemnity agreement set forth in the auditor's report are relied on by the defendant as establishing its right to take the property under the circumstances found; and as preventing such taking from being considered a preference:

"We do further agree, in the event of our being unable to complete or carry on the aforesaid contract, to assign, and we do hereby assign such plant as we may own or have upon said work to the said United States Fidelity & Guaranty Company."

1. The plaintiff contends that the property taken has been erroneously held by the auditor to be properly included in the term "plant." The auditor's findings describe the property as consisting of—

"Lumber, the greater part of it cut and ready to go into the building, bricks, lime, cement, structural iron for this contract, stone, window frames, a small amount of paint and painters' stock, flue lining, nails, some in full kegs and

some in kegs which had been opened and from which a part had been used, and certain horses, carts and harnesses."

King's contract for the performance of which the defendant became surety, was to construct certain buildings at Ft. McKinley, on Diamond Island above referred to. The property above described was what he had brought to the island to be used in the contract work. I see no reason to doubt that it was such property as the parties to the indemnity agreement intended to include by the words "such plant as we may use or have upon said work," or that it would naturally and properly fall within the meaning of those words, and I agree with the auditor that the property taken was part of the plant upon said work.

2. When King gave up the performance of the work he had contracted to do, he committed a breach of the condition of the bonds whereon the defendant was his surety and thereby incurred a liability to the defendant founded upon the indemnity agreement. The amount of that liability may not then have been fixed nor capable of being then fixed and it may have been depended to some extent upon contingencies, but the defendant seems to me to have then acquired a claim provable though not liquidated, and such as makes it a creditor within the meaning of section 60. In the bankruptcy proceedings begun against King on September 19, 1903, the defendant appeared to oppose the bankrupt's discharge as a creditor, and if a creditor on September 19th it was a creditor on August 26, 1903. Upon this point my conclusion is opposed to the finding made by the auditor.

3. If however the defendant was a creditor, the amount of its claim can only be ascertained according to the provisions of the indemnity agreement. This agreement, as the auditor finds, was entered into more than four months before the bankruptcy and when, so far as appears, King was solvent. The provisions above quoted from it which gave the defendant the right to take such plant as King might then own or have upon the work, in case of failure on his part to carry the work forward, can only have been intended, like the other provisions giving the defendant the right to continue and complete the work itself, to enable it to minimize its loss if subjected to actual liability as surety upon King's bonds. All the above agreements upon King's part entered, as well as the premium paid by him, into the consideration for which it had become his surety on those bonds. His liability to the defendant is to be ascertained, therefore, upon the basis established by those agreements, and was not that amount which it might have to pay by reason of its liability on King's bonds independently of and without benefit from the plant which he had given it the right to take and use; but the amount of such loss as it might sustain in completing the contract with such aid and assistance therein as it might gain by taking and using the plant in question. Of its claim against King so ascertained, it cannot of course be said that the defendant was enabled, by taking and using the plant, to obtain a greater percentage than that obtained upon their claims by other creditors of the same class, in the distribution to be effected through the bankruptcy proceedings.

4. If the above construction of the indemnity agreement is sound, the assignment of the plant to the defendant for which it provides is

to be regarded as a bona fide agreement, upon sufficient consideration, more than four months before King's bankruptcy, for the transfer upon a certain contingency of a specified portion of his property, and as sufficient to give the defendant, upon the happening of the contingency, a valid claim to the property. The exercise by the defendant of the right to take it thus acquired, though within four months of the bankruptcy, and notwithstanding its knowledge, whether actual or imputed, that King was then insolvent, did not bring about a preference in its favor. See Lowell, Bankruptcy, § 86, p. 67; In re Jackson Iron Mfg. Co., Fed. Cas. No. 7,153. King's consent to the taking, or that of the common-law assignees, in whom the title to all his property was then vested, so far as he could vest it in them, was, therefore, a consent to what they could not lawfully oppose. The auditor finds that it was given in the belief that the defendant was lawfully entitled to the property, and that neither he nor they or the defendant believed or had reasonable cause to believe that any preference was intended. According to the view of the matter above taken these findings must be approved. There is nothing to show any fraudulent intent on the part of King or the defendant toward other creditors, so far as the taking is concerned, or to show any intent other than to carry into effect the right given by the indemnity agreement.

5. The auditor finds that at the time the indemnity agreement was executed, King had not begun the contract work and that no part of the plant or material taken was then at Ft. McKinley. It does not appear when the plant or material taken was acquired by King nor when it was taken to Ft. McKinley. Assuming that it was all acquired by King after the execution of the indemnity agreement, the defendant's claim to it when it was taken was, in my opinion, none the less valid. The defendant's right to the property is still, as in Thompson v. Fairbanks, 196 U. S. 517, 25 Sup. Ct. 306, 49 L. Ed. 577, and Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956, to be judged not by the state of facts existing when possession was taken but by the state of facts existing when the right was given. Since possession was taken before the bankruptcy, the defendant, upon taking possession, held the property by a title relating back to the time when its right was acquired, at which time, so far as appears, there was nothing to prevent King from giving it such a right, and by a title which is good against the trustee in bankruptcy.

I find, therefore, that no preference is established, and judgment will be for the defendant.