# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

## FEDERAL FINANCE CORPORATION v. REED et al.

(Circuit Court of Appeals, First Circuit. February 26, 1924.)

### No. 1693.

1. **Bankruptcy** ⊚⇒166(4)—**Bankrupt's transfer of automobiles as security for payment of pre-existing debt held unlawful preference.**

    A bankrupt's transfer of automobiles within four months prior to bankruptcy to secure payment of loan previously made by transferee to bankrupt, on transferee's discovery that other automobiles transferred to transferee as security at the time the loan was made had been sold by the bankrupt without payment of notes secured thereby, *held* to constitute an unlawful preference.

2. **Bankruptcy** ⊚⇒163—**Transfer of automobiles by duly recorded bills of sale as security for loan made at time of transfer held not to constitute preference.**

    Automobile dealer's transfer of automobiles by duly recorded bills of sale given to secure payment of dealer's notes to transferee, and providing for reconveyance on payment of notes, *held* valid, and not an unlawful preference, under Bankruptcy Act, § 47a, cl. 2 (Comp. St. § 9631), though possession of cars remained in dealer, under G. L. Mass. c. 255, § 1, since amendments St. 1913, c. 656, and St. 1915, c. 226, § 1, especially in view of the fact that transferee took possession before petition in bankruptcy was filed against dealer or rights of third parties had accrued.

3. **Chattel mortgages** ⊚⇒43—**No particular form essential.**

    No particular or set form of words is required to constitute a mortgage of personal property.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Suit by George W. Reed and others, trustees in bankruptcy of the Massachusetts Motors, Inc., against the Federal Finance Corporation. Decree for complainants (291 Fed. 679), and defendant appeals. Reversed and remanded.

John S. Stone and Dunbar F. Carpenter, both of Boston, Mass. (Lawrence A. Ford and Gaston, Snow, Saltonstall & Hunt, all of Boston, Mass., on the brief), for appellant.

George W. Reed, of Boston, Mass., for appellees.

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

296 F.—1

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The appellees are the trustees in bankruptcy of the Massachusetts Motors, Inc., adjudicated a bankrupt on September 11, 1920, on an involuntary petition filed August 28, 1920. In their suit to recover for unlawful preferences, there was a decree against the Finance Corporation to the amount of $28,749.05. The bankrupt was a dealer in automobiles, with its principal place of business in Boston, and with branches in other cities in Massachusetts, New Hampshire, and Rhode Island. Its business was in substantial part financed by the appellant in a course of business described as follows:

As cars were shipped by manufacturers to the bankrupt in Boston, a bill of lading, with sight draft attached, drawn on the bankrupt, would be sent to a Boston bank. The Motors Company, on receiving notice of the shipment, made out its own check, payable to the Finance Corporation, for approximately 20 per cent. of the amount of the draft, and then received from the Finance Corporation a check to cover the face of the draft. This check was then delivered to the bank, which handed the bill of lading to the Motors Company, so that the cars were then taken from the railroad to the bankrupt's place of business. As security for such loan (of approximately 80 per cent. of the invoice price of the cars), an instrument was executed and delivered, in the form of a bill of sale from the Motors Company to the Finance Corporation, plus an agreement to reconvey on the payment of the notes listed on the back of the instrument. The instrument also gave the Finance Corporation a right to insure, power to seize cars in case of default, etc. All such instruments, here involved, 11 in number, were duly recorded within 15 days with the city clerk of Boston.

The Finance Corporation began to do this sort of business with the bankrupt in April, 1920, and continued to make loans on such security until the latter part of July. The practice was, as the District Court expressly found, that, as soon as a car which was covered by one of these instruments was sold, the Motors Company would at once pay to the Finance Corporation the amount of the note secured by the car. This is an important fact, distinguishing this case from several of those cited and relied upon in the District Court.

In late July, 1920, the Finance Corporation learned that the Motors Company had sold 6 or more cars and had not paid the notes secured thereby. The amount thus in default was about $11,000. This breach of agreement evoked immediate protest from the Finance Corporation. But as the Motors Company was unable then to pay the amount due, on August 4, 1920, it gave the Finance Corporation an instrument entitled "Conditional Sale Lease Agreement," purporting to give the Finance Corporation security on about 23 secondhand cars, which the Motors Company then had. Some of these cars were afterwards sold and the proceeds applied by the Finance Corporation as payment pro tanto of the Motors Company's debt.

In late August, the Finance Corporation learned that other financing concerns, having similar contracts with the bankrupt, were tak-

ing possession of the cars covered by their contracts. The Finance Corporation thereupon took possession of cars covered by the recorded instruments above referred to. These cars were subsequently sold for something over $20,000.

We may here note, parenthetically, that we are unable to reconcile the computations we find in the record, in the decision of the court below, and in the briefs of counsel. But enough appears, so that we can determine the questions of controlling importance, leaving for subsequent determination by the court below all accounting questions.

The trustees contend that all moneys received by the Finance Corporation as a result of these transactions were unlawful preferences.

[1] 1. As to the amounts received under the instrument dated August 4:

Appellant's learned counsel concede, as they must, that this attempted transfer by way of security was not for a present consideration, and that (the other elements of an unlawful preference being present) the proceeds of sales of cars covered by that agreement must be repaid as unlawful preferences. This seems to involve $5,000 to $8,000.

[2] 2. But the main question (involving over $20,000) is as to whether the recorded instruments—given when the bills of lading representing the cars were received—are valid. The District Court held them invalid, because:

"The cars were to be sold by the bankrupt, and there was nothing to show that they did not belong to it. * * * The cars were left in the possession of the bankrupt, with power to sell them, and thereby the defendant allowed the bankrupt to get the credit of the ownership of the cars. The defendant cannot insist on its title to the cars, as the rights of creditors have intervened."

We think this ruling cannot be sustained.

There is and can be no claim of fraud. The transactions were for present considerations and in entire good faith. The question before us is one of Massachusetts law, as is agreed by counsel on both sides. Etheridge v. Sperry, Watt & Garver, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171; Duffy v. Charak, 236 U. S. 97, 99, 35 Sup. Ct. 264, 59 L. Ed. 483, and cases cited.

[3] It is difficult to see why the instruments held invalid were not duly recorded chattel mortgages. G. L. Mass. c. 255, § 1, since the amendment by St. 1913, c. 656, and St. 1915, c. 226, § 1, expressly provides that it shall "apply to bills of sale given for security." These instruments were bills of sale given for security. They are bills of sale running from the Motors Company to the Finance Corporation; with a defeasance; they were duly recorded. The parties treated them as being in all respects chattel mortgages. The fact that they were not exactly in the conventional form of a chattel mortgage, and so entitled, can make no difference. No particular or set form of words is required to constitute a mortgage of personal property. Harding v. Eldridge, 186 Mass. 39, 41, 71 N. E. 115.

But, even if not technically mortgages, they are conditional bills of sale, good under the uniform holdings in Massachusetts. Briggs v. Parkman, 2 Metc. (Mass.) 258, 37 Am. Dec. 89; Jones v. Huggeford, 3 Metc. (Mass.) 515; Mitchell v. Black, 6 Gray (Mass.) 100;

Blanchard v. Cooke, 144 Mass. 207, 11 N. E. 83; Bliss v. Crosier, 159 Mass. 498, 34 N. E. 1075; Williston, Sales, § 324, and note. But, apart from the recording act and rights arising under the laws of Massachusetts as to the conditional sales, possession of the cars was taken and held by the Finance Corporation before the petition in bankruptcy was filed or any rights of third parties had accrued. Bailey v. Baker Ice Mch., 239 U. S. 268, 274, 275, 36 Sup. Ct. 50, 60 L. Ed. 275; Bankruptcy Act, § 47a, cl. 2 (Comp. St. § 9631).

We find no authority which, fairly analyzed, supports the contention of the trustees. Several cases cited, and apparently relied upon by the learned District Judge, deal with the law of other states, and are not at all in point. This is true as to Rock Island Plow Co. v. Reardon, 222 U. S. 354, 32 Sup. Ct. 164, 56 L. Ed. 231; In re Hallbauer (D. C.) 275 Fed. 126; Industrial Finance Corporation v. Cappelmann (C. C. A.) 284 Fed. 8; Boice v. Finance & Guaranty Corporation, 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654.

But the Harrington Case (D. C.) 212 Fed. 542, and (on appeal to this court) Flanders Motor Co. v. Reed, 220 Fed. 642, 136. C. C. A. 250, are in point, and, properly analyzed, are practically conclusive against the present contention of the appellees.

In that case the written agreement between the automobile manufacturer and dealer gave the dealer the right to sell certain cars within a designated territory, and to buy parts at a discount. The parts were, of course, to be attached to the cars sold or repaired by the dealer, so that they would be impossible of reclamation; and such had been the uniform course of business. Moreover, there was no reservation by the manufacturer of a right to the proceeds of the sales of such parts. But the written agreement, nevertheless, provided for the retention of title to all parts, and that title should not pass until the parts were fully paid for. Both courts held that under such circumstances the rights of the parties were not to be determined merely by the written instrument, but by all the pertinent facts and circumstances, and that, although the case was to be determined "according to the law of Massachusetts, under which special interests in personal property are strongly protected," it was plain that the rights purported to be reserved in the agreement had been waived, so that they could not then be asserted against the trustee in bankruptcy. But in this court in the opinion of Judge Dodge, the following significant language is used:

"The case, as the opinion below states, is to be determined according to the law of Massachusetts, which does not make recording necessary to the validity of an agreement for conditional sale. If the provision for reservation of title in clause 9 expresses an agreement made in good faith, intended by both parties to be actually observed according to its terms in their dealings regarding the parts in question, and in fact so observed by them until the bankruptcy, the petitioner is entitled to the parts as against the bankrupts' trustee."

This amounts to holding that when, as are the undisputed facts in the present case, such agreements for conditional sale are made in good faith by both parties, and are intended to be observed according to their tenor, and are insisted upon as they were by the Finance Company, they are good under Massachusetts law.

In the same opinion, the court also pointed out that the agreement then before the court, as well as the conduct of the parties under it, radically distinguished that case from Ludvigh v. American Woolen Co., 231 U. S. 522, 34 Sup. Ct. 161, 58 L. Ed. 345. Much of the reasoning in the Ludvigh Case is applicable to the case now before us, and inconsistent with the decision of this case in the District Court.

Spooner v. Cummings, 151 Mass. 313, 23 N. E. 839, and Guaranty Security Corp. v. Eastern Steamship Co., 241 Mass. 120, 134 N. E. 364, cited by the District Court, are simply to the effect that the real owner of property delivered on conditional sale or lease may, through a course of dealings, become estopped to set up his title as against a bona fide purchaser for value. Compare Williston, Sales, § 329. But that is not this case.

The ruling below rests upon a doctrine of constructive fraud arising from ostensible ownership broader than has ever been law in Massachusetts. We must enforce the law of Massachusetts. Compare Williston, Sales, § 324. See Harkness v. Russell, 118 U. S. 663, 669, 670, 7 Sup. Ct. 51, 30 L. Ed. 285, et seq., where Mr. Justice Bradley deals at some length with the doctrine of ostensible ownership and its origin in the English Bankruptcy Act, and reviews the rulings in several of our states concerning conditional bills of sale.

The result is that the appellant is entitled to hold the proceeds of all cars seized and sold under the initial written instruments, and the trustees are, as above stated, entitled to recover only the amount involved in transactions arising under the instrument of August 4, 1920.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion. The appellant recovers costs in this court.