# MASSACHUSETTS TRUST CO. v. Mac-PHERSON.

(Circuit Court of Appeals, First Circuit. February 26, 1924. On Rehearing November 5, 1924.)

No. 1676.

Bankruptcy ⟨key⟩163 — Taking of possession within four months prior to bankruptcy, under right which was acquired more than four months prior thereto, held not to constitute unlawful preference.

Where automobile dealer, more than four months prior to bankruptcy proceedings against him, transferred warehouse receipts covering automobiles to secure transferee's loan to dealer of 80 per cent. of the purchase price of the cars, and the transferee took possession of the cars before rights of third persons had intervened and before the commencement of proceedings in bankruptcy, the dealer's trustee in bankruptcy was not entitled to the cars on the ground that the taking of possession constituted an unlawful preference, under Bankruptcy Act, § 47a, cl. 2, as amended in 1910 (Comp. St. § 9631), though the transferee took possession within four months before bankruptcy, since transferee's right to possession was acquired more than four months prior to bankruptcy, and its possessory title or lien related back and took effect as of the time the right accrued.

Anderson, Circuit Judge, dissenting on rehearing.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Suit by Henry S. MacPherson, trustee in bankruptcy of the Chandler Motors of New England, Inc., against the Massachusetts Trust Company. Decree for complainant (291 F. 676), and defendant appeals. Reversed and remanded, with directions.

Michael J. Mulkern, of Boston, Mass. (Ralph H. Willard and Ham, Willard & Taylor, all of Boston, Mass., on the brief), for appellant.

Joseph B. Jacobs, of Boston, Mass. (Jacobs & Jacobs, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. The appellee is trustee in bankruptcy of the Chandler Motors of New England, Inc., against whom an involuntary petition in bankruptcy was filed on the 19th of October, 1922, and upon which it was later adjudicated a bankrupt. In his suit to recover an unlawful preference relating to a transfer on the 19th of September, 1922, of certain automobiles to the defendant (the Massachusetts Trust Company), there was a decree against

the defendant for the sum of $16,024 and interest to the date of the decree, amounting to $568.85.

The Chandler Company was a dealer in Chandler automobiles, with its principal place of business in Boston. Its business in the handling of these cars was financed by the Trust Company in the following manner:

The manufacturer of the cars shipped them to the Chandler Company at Boston. A bill of lading, with a draft attached drawn on the Chandler Company, was sent to the Trust Company. The Trust Company then notified the Chandler Company, who brought to it a check for the amount of the draft. The Trust Company on receiving the check, surrendered the bill of lading, but held the draft until the Chandler Company removed the cars from the railway to the Beacon Storage Company, a storage warehouse, and obtained therefrom warehouse receipts describing the particular cars described in the draft and the bill of lading. The Chandler Company then hypothecated these receipts with the Trust Company to secure their notes for 80 per cent. of the amount of the check or draft, and thereupon a loan of 80 per cent. of the value of the cars covered by the bill of lading was credited to the Chandler Company's account in the Trust Company, and the check was charged against that account. In other words the actual loan was for 80 per cent. of the check or draft, and notes for this amount were given by the Chandler Company to the Trust Company, to secure which a warehouse receipt or receipts describing the particular car or cars into which the loan went were pledged.

The Beacon Storage Company had a place of business on the fourth floor of a building, the first and second floors of which were occupied by the Chandler Company. It issued a nonnegotiable warehouse receipt for each car which was brought there by the Chandler Company under the conditions above stated. In each receipt the Beacon Storage Company acknowledged that it had received as depository from the Chandler Company on account of the Trust Company a car, describing it and giving its number, and stating that it would deliver the same on surrender of the receipt properly indorsed and the payment of storage charges. The Beacon Storage Company was a warehouse company incorporated under the laws of Massachusetts. Its officers were also the officers of the Chandler Company, and, while the Trust Company did not know who

its officers were, it did know they were connected with the Chandler Company. There was no sign of the Beacon Storage Company on the outside of the building, although it had signs on many of the interior doors.

The bulk of the cars covered by the warehouse receipts were kept on the fourth floor of the building, and the particular cars here in question, when taken by the Trust Company as hereafter stated, were taken from this floor; but the evidence showed that the Chandler Company had, at times theretofore, removed cars from the fourth floor to its salesrooms for display and sale. Each car bore a manufacturer's number, which was inserted in the warehouse receipt for that car, and attached to the radiator rod under the hood of the car was a tag with the word "Mass." to indicate that it belonged to the Massachusetts Trust Company.

The Trust Company knew that the Chandler Company was engaged in the business of selling cars, and knew that certain of the cars covered by the warehouse receipts were offered for sale; but in negotiating the sale of a car the Chandler Company was expected and required to pay the note and take up the warehouse receipt covering such car before delivering it to a purchaser, and this was done.

August 1, 1922, the Trust Company learned that the Chandler Company had a deficit of $37,000 in its quick assets, and, shortly before September 19, that it was unable to renew with another bank an unsecured loan for $75,000. About this time or shortly thereafter it demanded payment of the collateral notes (which were demand notes), and on the 19th of September, 1922, took possession of the automobiles described in the warehouse receipts, and removed them from the fourth floor of the building occupied by the Beacon Storage Warehouse Company, and later sold them.

It is agreed that the cars were of the value of $16,024. In the court below it was found that the Trust Company had reasonable cause to believe that the Chandler Company was in serious difficulties and was insolvent; that the cars, prior to September 19, had not been in the actual or constructive possession of the Trust Company, as the Beacon Storage Company did not have such exclusive possession of the cars as would give the Trust Company constructive possession of them under the warehouse receipts. It did not find that the transaction between the Chandler Company and the Trust Company was fraudulent, and there

was no evidence from which fraud in fact could reasonably be found.

We do not think, on the facts in this case, that the finding that the Beacon Storage Company did not have exclusive possession of the motor cars concludes the case in the plaintiff's favor. The facts show that 80 per cent. of the purchase price of these cars was advanced by the Trust Company; that in consideration of this advance it was agreed between the parties that the specific cars into which the Trust Company's money went should be held as security in the nature of a pledge for the notes evidencing the loan that went into each car; that there was no fraud in the transaction; that as a car was sold by the Chandler Company the purchase price was required to be and was paid by it to the Trust Company before delivery of the car to pay the note evidencing the loan that went into the car; and that, the notes representing the particular cars in controversy not having been paid upon demand, the Trust Company took possession of them a month or more prior to the filing of the petition in bankruptcy, as they had the right to do under the agreement contained in the warehouse receipts. At the time the Trust Company took possession of the cars no rights of third persons had intervened, and the right under which they took possession having been acquired more than four months prior to filing the petition in bankruptcy, its possessory title or lien related back and took effect as of the time the right accrued. It may be conceded that, if on September 19, 1922, when the Trust Company took possession of the automobiles, which was within four months of the filing of the petition, its rights in the property began only on that date, the Chandler Company being then insolvent, and the Trust Company having reasonable cause to believe that it was, the taking of possession would constitute an unlawful preference. But as the Trust Company's rights in the automobiles arose as of the time the loans were made and the notes and warehouse receipts were given, and the transactions were entered into in good faith, the taking of possession did not constitute an unlawful preference or transfer within the four months. The agreement contained in each note and receipt was not a promise to give security in the future; it was of a more limited and cautious nature, confined to specific and identified things, and purported to give a present right.

The possession taken before commencement of the proceedings in bankruptcy, and

before third persons had obtained liens or rights by attachment or otherwise, gave the Trust Company a lien which was good under the common law of Massachusetts as against creditors of the Chandler Company. Tatman v. Humphrey, 184 Mass. 361, 362, 68 N. E. 844, 63 L. R. A. 738, 100 Am. St. Rep. 562; Sawyer v. Turpin, 91 U. S. 114, 23 L. Ed. 235; Humphrey v. Tatman, 198 U. S. 91, 94, 25 S. Ct. 567, 49 L. Ed. 956; Mitchell v. Black, 6 Gray (Mass.) 100, 104, 105.

In the Tatman Case the mortgage, which covered the mortgagor's present and after-acquired stock in trade and fixtures, was not recorded and the goods in controversy remained in the mortgagor's possession down to within three weeks before the filing of the petition in bankruptcy, when they were taken possession of by the mortgagee, and it was held that the taking of the property by the mortgagee was not a preference voidable under the bankruptcy law. Such a mortgage, so far as it related to the after-acquired property, only created an equitable title in the property when acquired with a right in the mortgagee to take possession, and possession having been taken in pursuance of that right, the equitable title became a legal one. That case seems to be weaker than the one now before us, for there is nothing in that case to show that the obligation the mortgage was given to secure was for a present rather than a past consideration, or, if for a present consideration, that the money obtained went into the after-acquired property, while here there is no question but that the money loaned by the Trust Company to the bankrupt went into the specific cars which the parties understood and agreed were pledged to secure the loan. See, also, on this question Hurley v. Atchison, Topeka & Santa Fé Ry., 213 U. S. 126, 29 S. Ct. 466, 53 L. Ed. 729; Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577; Sexton v. Kessler, 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995; Macomber v. Parker, 14 Pick. (Mass.) 497, 504, 505; Federal Finance Corporation v. Reed, 296 F. 1, decided by this court February 26, 1924.

The trustee in bankruptcy acquired no rights as an attaching or judgment creditor in the cars by virtue of section 47a, clause 2 of the Bankruptcy Act of 1898 as amended in 1910 (Comp. St. § 9631) for any rights of this nature conferred upon him by section 47a, clause 2, would not arise or relate back to a date earlier than the filing of the petition in bankruptcy, which was long subsequent to the taking of possession by the Trust Company. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 274, 275, 36 S. Ct. 50, 60 L. Ed. 275.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to enter a decree for the appellant, with costs.

### On Rehearing.

JOHNSON, Circuit Judge. An opinion in the above case was handed down by this court February 26, 1924. Since then the case has been reargued, and it is claimed that we erred in our former opinion in applying the doctrine of Humphrey v. Tatman, 198 U. S. 91, 94, 25 S. Ct. 567, 49 L. Ed. 956, to this case because, under the law of Massachusetts, it is not applicable to a pledge.

In our former opinion we based the right of the Massachusetts Trust Company to hold the proceeds derived from the sale of the cars of which it took possession upon the ground that the note and receipt given by the Motor Company did not constitute a promise to give security in the future, but gave a present right which attached to the specific car upon which each loan was made and for which a note and receipt were given. No decision of the Massachusetts court has been cited by counsel in which that court has held that the taking of possession by the pledgee within four months of the filing of a petition in bankruptcy, under an agreement executed before this period, made such taking a preferential transfer under section 60b of the Bankruptcy Act (Comp. St. § 9644). In Coggan v. Ward, 215 Mass. 13, 102 N. E. 336, the court said:

"It is the settled law of this commonwealth that an instrument of transfer of personal property, absolute in form but intended by the parties to be a mortgage, genuine, honest and valid as such when executed and delivered, authorizes the person named as vendee to take possession of the property, in order to secure his own debt, at any time before the rights of other persons have intervened, and that thereby he acquires a title which relates back for its validity to the date of the instrument, and that, although the taking possession may be at a time when the debtor is insolvent to the knowledge of himself and of his creditor named as vendee in the instrument of transfer, it is nevertheless effectual, although occurring within a period of time previous to insolvency, which would invalidate the

transaction if the initial step had occurred at the time of taking possession."

While the general law of pledge requires possession in the pledgee, yet, where possession is taken before the rights of third parties have intervened and in the assertion of a right given by a contract made before the beginning of the four months' period, which gave the pledgee an equitable lien upon the property taken, we think the same law should be applied as in case of a mortgage, given before but not recorded until within the four months' period. The Massachusetts court in its decisions has given as broad an application of the doctrine of an equitable lien as have the federal courts. See Westall v. Wood, 212 Mass. 540, 99 N. E. 325, in which the court cites with approval Hurley v. Atchison, Topeka & Santa Fé Ry., 213 U. S. 126, 29 S. Ct. 466, 53 L. Ed. 729, and Connolly v. Bouck, 174 F. 312, 98 C. C. A. 184; also Delval v. Gagnon et al., 213 Mass. 203, 207, 99 N. E. 1095.

As we pointed out in our former opinion, the right of the trustee attached at the time of the filing of the petition in bankruptcy, citing Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275. At that time no third party had secured any adversary rights. After possession had been taken no creditor could have attached the automobiles or seized them upon execution; and under the Bankruptcy Act the trustee, as to property not in the possession of the bankruptcy court, has the right of a creditor holding an execution which has been returned unsatisfied.

Counsel have claimed in argument that Humphrey v. Tatman, supra, may be distinguished from the present case because, in that case, a mortgage was given and there was a present transfer of title. In the present case, however, there was a transfer to the pledgee of an equitable lien with a present right of possession. There is no question about the honesty and validity of the claim of the Trust Company. The proof is clear and convincing that it actually advanced the money which was used in the purchase of the cars upon which a lien was given for the satisfaction of its loan in each instance; and that it was the understanding and intention of the parties that the Trust Company should have a lien upon each car for the money which it had advanced toward its purchase.

If it be admitted that the delivery to the Beacon Storage Warehouse Company did not satisfy the requirement of a pledge, because the possession of the Warehouse Company was not exclusive—a question which we do not now feel called upon to decide—it is, nevertheless, true that the notes gave the Trust Company an equitable lien upon each car for the money which it had advanced to pay for the same, with the right of possession. When it exercised this right, before the rights of third parties intervened and before the filing of the petition in bankruptcy, its power to do so was conferred by the notes and the warehouse receipts, all of which were given before the four months' period began to run.

That a pledgee may hold property of which possession is thus taken was recognized in this District by Judge Dodge in Wood v. United States Fidelity & Guaranty Co. (D. C.) 143 F. 424, who held that the right of the defendant to take possession of property was to be adjudged not by the state of facts existing when possession was taken, but by the state of facts existing when the right was given, and that, since possession was taken before bankruptcy, the defendant held the property by a title relating back to the time when its right was acquired and that there was no preference in taking possession within the four months' period before bankruptcy.

The same was held by this court in Atherton v. Beaman, 264 F. 878, in which we cited Johnson v. Root Mfg. Co., 241 U. S. 160, 36 S. Ct. 520, 60 L. Ed. 934, Sumner v. Hamlet, 12 Pick. (Mass.) 76, and Copeland v. Barnes, 147 Mass. 388, 390, 18 N. E. 65.

In that case we held that the designation of carload lots of lumber within four months of bankruptcy, made under an authorization given before the commencement of that period, would not render the pledge invalid as against the trustees in bankruptcy, "because, in a transaction untainted with fraud and where the rights of third parties are not affected, such designation relates back to the date of the order."

As we pointed out in our former opinion, this was not an agreement to give a pledge in the future; "it was of a more limited and cautious nature, confined to specific and identified things, and purported to give a present right."

After a careful examination of the federal decisions and those of the Supreme Judicial Court of Massachusetts, we see no reason to change the conclusion which we reached in our former opinion.

ANDERSON, Circuit Judge (dissenting). On careful reconsideration, I am driven to the conclusion that this decision is wrong; and that the error will go far to destroy the wholesome preference provisions of the Bankruptcy Act. The fundamental trouble grows, I think, out of a misinterpretation of the record. Both opinions go upon the theory of some right accruing to the Trust Company before the four months' period. But the notes given were nothing but collateral notes in familiar form, reciting the deposit of designated cars, with the usual powers of sale and of substitution. They are, except as to names and amounts, for *all* legal purposes, exactly like the collateral notes found in the form books. Compare Tiffany's Form Book, pp. 1124 and 1125. But in this case the recital of the pledge of designated cars was false, as both parties well knew. The cars remained in the possession of the owner-debtor-bankrupt. That the receipt of the Beacon Storage Warehouse Company was nothing but the receipt of the pledgor under an alias is too plain for serious discussion. There was, therefore, nothing but collateral notes with a false recital therein—the recital of a nonexistent pledge. This was everything the Trust Company had—and relied upon—until, within the four months' period, it found its debtor in default and insolvent. It then seized the cars, thus showing conclusively that it knew it had no real pledge. This seizure, if with the debtor's assent, grounded a real pledge, *then made*. If without the debtor's assent, it was a conversion; the debtor might have replevied the cars. But if with the debtor's assent, the result was, so far as present questions are concerned, the same as if the Trust Company had then sued and attached the cars.

The majority hold that this false recital shall be transmuted into an equitable lien, or into some unnamed right, thus described in the original opinion: "The agreement contained in each note and receipt was not a promise to give security in the future; it was of a more limited and cautious nature, confined to specific and identified things, and *purported to give a present right*." (Italics mine.) Not so; it purported "to give" nothing; the note simply recited that the promisor *had* "deposited with said company as general collateral security" various cars. It was only from the *deposit* already or contemporaneously made that any security could arise, as the note itself recognized. It was not the writing that made the pledge. No writing can make a

pledge. No real pledge requires any writing. It requires an act. As the cars had not, in fact, been deposited with said company, the recital to the contrary was idle and empty of legal import.

To sustain this result is to hold that every false recital of a present pledge shall be transmuted into an equitable lien—or into some other undefined and hitherto unknown species of security—and to allow it to prevail against the title of the trustee in bankruptcy. To such a destruction of vital provisions of the bankruptcy law, I cannot contribute.

It has always been elementary that mere intent cannot change the legal results, arising from one form of agreement, into another form of agreement. Cf. Hunt v. Rhodes, 1 Pet. 1, 15, 17, 7 L. Ed. 27, where it was held that when the parties had adopted a power of attorney as a means of security, the creditor took the risk of losing it by the death of the grantor. Nothing has ever been more common (or more futile) than for debtors and creditors to agree upon an unrecorded bill of sale as security, thinking thereby to avoid the annoyance and publicity incident to a duly recorded chattel mortgage. If the courts are to transmute false recitals of pledge into equitable liens and enforce them as against trustees in bankruptcy, a fortiori, unrecorded mortgages, or even agreements for mortgages, must be allowed to prevail. In this case it is clear that the parties did not want recorded mortgages, and did want to leave the putative pledgor in possession of the cars so as to be unhampered in the sale thereof. This arrangement was for the obvious purpose of avoiding the limitations the law puts upon ostensible but unreal ownership. Compare Harkness v. Russell, 118 U. S. 663, 669, 670, 7 S. Ct. 51, 30 L. Ed. 285. It is no part of the duty of courts to assist parties to adopt business methods running counter to the public policy evidenced by our recording acts and by the requirement that creditors, in order to have real pledges, must take and retain possession—not leave the property in the possession, and apparent ownership, of the debtor. Compare Blanchard v. Cooke, 144 Mass. 207, 218, 225, 11 N. E. 83; Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779.

My view of the facts makes it unnecessary to consider and discuss the cases of conflict between the rights of holders of real equitable liens and trustees in bankruptcy. This problem is elaborately treated in 4 Remington (3d Ed.) §§ 1782, 1783 and 1784;

and the nature and scope of equitable liens are fully discussed in 3 Pomeroy's Equity (4th Ed.) §§ 1233 to 1791, particularly 1235. In Hayes v. Gibson, 279 F. 812, 22 A. L. R. 1372, the opinion of the Court of Appeals for the Third Circuit shows a recognition of the danger to the fundamentally important principle of equality of treatment of creditors in bankruptcy, arising out of holding equitable liens superior to the title of a trustee in bankruptcy. It is a doctrine not to be extended by construction.

But I repeat and emphasize: The close and difficult questions arising in cases in which creditors plainly have equitable liens are not now before us. So far as I know, no court, except this, has ever held that false recitals of pledges in ordinary collateral notes can be transmuted into equitable liens and, as against trustees in bankruptcy, be enforced as valid forms of security.