## CROSBY v. PACKER et al.

Circuit Court of Appeals, First Circuit.
November 19, 1927.

No. 2160.

**1. Bankruptcy ⬦303(4)—Evidence held to show guardian's agreement to hold realty as security for money borrowed from ward's estate, precluding recovery by guardian's trustee in bankruptcy.**

Evidence *held* to show that guardian, at time of borrowing money from ward's estate, agreed with himself as guardian to hold realty as security for repayment thereof, so as to preclude bankruptcy trustee's recovering such payment as preferential after guardian's bankruptcy.

**2. Frauds, statute of ⬦56(1)—That agreement to hold realty as security was not in writing did not make it invalid.**

That agreement to hold real estate as security was not reduced to writing did not render it invalid.

**3. Liens ⬦7—Oral agreements, creating equitable interests, are enforceable in Massachusetts.**

Oral agreements, creating equitable interests in property, when established, are recognized and enforced in Massachusetts.

**4. Bankruptcy ⬦161(2)—Bankrupt's payment of debt within four months of bankruptcy, under right which vested more than four months before bankruptcy, held not unlawful preference (Bankruptcy Act, § 47a, cl. 2, and § 60b [11 USCA §§ 75, 96]).**

Where bankrupt, while solvent and more than seven years before filing of involuntary petition, borrowed money from his ward under agreement with himself as guardian to hold real estate as security for repayment thereof, ward's estate acquired an equitable interest or lien in the real estate and its proceeds, and payment of proceeds of realty in part satisfaction of the debt within four months of filing of petition did not constitute an unlawful preference, under Bankruptcy Act, § 60b (11 USCA § 96), and bankruptcy trustee acquired no rights in the realty or its proceeds, under Bankruptcy Act, § 47a, cl. 2 (11 USCA § 75).

**5. Bankruptcy ⬦163—Giving of insurance policy payable to wife and having no surrender value, to secure loan, and payment of money borrowed, held not "unlawful preference."**

Bankrupt's transfer of insurance policy, payable to his wife and having no surrender value, to secure money borrowed, and payment of such money, were not preferential, since the transaction did not result in diminution of his distributable estate.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Unlawful Preference.]

Appeal from the District Court of the United States, for the District of Massachusetts; James M. Morton, Judge.

Suit by Arthur P. Crosby, as trustee of Fred W. Sproul, against said Sproul and others, to recover alleged preferences, in which Henry W. Packer, as guardian of Ella F. De Coster, intervened. From a decree of partial recovery to plaintiff (17 F.[2d] 325), plaintiff appeals. Affirmed.

John J. Hartigan, of Boston, Mass. (George V. Phipps and Phipps, Durgin & Cook, all of Boston, Mass., on the brief), for appellant.

Henry W. Packer, of Boston, Mass. (Allen, Abbot & Packer, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a proceeding in equity, brought by the trustee in bankruptcy of one Sproul to recover as preferences, under section 60b of the Bankruptcy Act (11 USCA § 96), certain payments made by Sproul individually to himself as guardian of Ella F. De Coster, an insane ward. At the time the proceeding was brought (May 3, 1926), Sproul had settled his account as guardian in the probate court, and his resignation had (on February 9, 1926) been accepted. On May 19, 1926, Henry W. Packer was appointed guardian of the insane person, and was allowed to intervene as defendant. The proceeding was originally brought against Sproul, as guardian,

and three savings banks, in which the alleged preferences had been deposited in the ward's account. The case was tried in the District Court upon certain agreed facts and the oral testimony of three witnesses.

It appears that in the latter part of 1917 and the first part of 1918 Sproul borrowed from the estate of his ward $5,500, for which he gave notes for that amount, payable to himself as guardian, with interest at 6 per cent.; that he did so because the income received from the savings banks in which the money of the ward was then deposited was insufficient to meet her bills in the institution where she was confined; that he was solvent and in good credit at the time, and by so loaning the money the income was made sufficient to pay the ward's bills; that at that time he owned certain real estate in Allston; that when he borrowed this money "he intended that this real estate should be held as security for it, and used the money on that understanding"; that his wife then agreed to let her dower interest in this real estate stand for the loan; that in November, 1925, Sproul became insolvent; that December 10, 1925, he made an assignment for the benefit of his creditors; that February 20, 1926, an involuntary petition in bankruptcy was filed against him; and that on March 5, 1926, he was adjudged a bankrupt.

In November, 1925, and within four months of the filing of the petition, Sproul sold the Allston real estate (his wife releasing dower), netting therefrom $3,500, which, on November 19, 1925, he deposited in two of the three savings banks to his ward's account. About the same time (November, 1925), he borrowed $1,000 from a friend, giving as security an insurance policy upon his life, payable to his wife. This policy had no cash surrender value, and his wife pledged her interest in it to enable him to raise the money to be used towards repaying the loan from his ward's estate. This sum was deposited November 19, 1925, in one of the savings banks, to the ward's account. He also borrowed at this time from his sister the sum of $120 for the express purpose of repaying to that extent the amount borrowed from the ward's estate, which was likewise deposited November 20, 1925, in one of the savings banks, to the credit of the ward's account. In his final account as guardian, the difference between the sums thus repaid ($4,620) and the $5,500 originally borrowed was covered by a charge for his services, and the notes given were thus satisfied.

The only witnesses were Sproul, his wife, and a lady, who was formerly his bookkeeper,

but had ceased to be such at the time of the trial. The District Court found that to the extent the case depended upon the testimony of these witnesses they had testified with substantial accuracy, and that their testimony should be accepted; that "Sproul, at the time of loaning [borrowing] the money and thenceforward, regarded the Allston property as held by him as security for the loan," and being of the opinion that an equitable interest or trust had thus been created in the real estate in favor of the ward's estate, it held that the payment of the net proceeds of the real estate to the ward's estate, though within four months of the filing of the petition in bankruptcy, was not a preference.

As to the $1,000 borrowed on the life insurance policy, the District Court found that the insurance policy was payable to the wife; that it had no cash surrender value; that the wife pledged her interest in it "to enable her husband to raise the money to repay to that extent what he had borrowed from the ward's estate"; and held that the $1,000 was not recoverable by the trustee.

As to the $120 that was borrowed from the sister and paid into the ward's estate, while it was found that it was borrowed "for the express purpose of paying it to his ward's estate, to repay to that extent the amount borrowed," the District Court ruled that it was recoverable.

By his assignments of error the trustee (appellant) contends that the court erred (1) in finding that a binding agreement or contract was made between Sproul as an individual and himself as guardian to hold the Allston property as security for the $5,500 loan, and in ruling that the Allston property was charged with a trust or equitable lien in favor of the ward's estate; and (2) in finding and ruling that the $1,000 borrowed of a friend did not increase the total indebtedness of the bankrupt, and that the payment of the $1,000 to the ward's estate was not a preferential payment.

No appeal was taken by the defendants from the decree awarding the trustee the $120. It is therefore not open to us to inquire whether the decree in that respect is correct or not.

[1] As to the question presented by the first assignment, we are satisfied that there was substantial evidence from which it reasonably could be found that, at the time the loan of $5,500 was made, it was agreed that the Allston real estate was to be held by the bankrupt in trust and as security for its repayment. There was little, if any, evidence that could be said to be in conflict with this

conclusion. Whether this agreement was in fact made depended almost wholly upon the credit to be attached to the oral testimony given in open court by the witnesses called in its support. The court below has found that these witnesses testified truthfully, and such being the case this court accepts its finding. On this record it cannot be said that their testimony was untruthful, and should be rejected, even if in a given case facts might appear authorizing such action by this court.

[2] The fact that the agreement (to hold the real estate as security) was not reduced to writing does not render it invalid. 27 Corpus Juris, 324.

[3] Agreements creating equitable interests in property, when established, are recognized and enforced in Massachusetts, where this contract was made. Westall v. Wood, 212 Mass. 540, 99 N. E. 325; Mass. Trust Co. v. MacPherson (C. C. A.) 1 F.(2d) 769, and cases there cited. See 37 Corpus Juris, 308, 321, 322, 326.

[4] By the agreement, made while Sproul was solvent and some seven years prior to the filing of the petition, the ward's estate acquired an equitable interest or lien in the real estate and its proceeds, and, as the rights of the ward's estate therein arose at the time the agreement was made, the payment and receipt of the proceeds in part satisfaction of the loan did not constitute an unlawful preference or transfer, though made within four months of the filing of the petition. It was not an agreement or promise to give security in the future, but was for a present right, and by the payment and receipt of the proceeds, before the filing of the petition, the ward's estate acquired the legal title thereto. Mass. Trust Co. v. MacPherson (C. C. A.) 1 F.(2d) 769, 771, 772; Petition of Post (C. C. A.) 17 F.(2d) 555. The trustee acquired no rights in the real estate or its proceeds by virtue of section 47a, cl. 2, of the Bankruptcy Act of 1898, as amended in 1910 (11 USCA § 75); for such rights as are conferred upon him by that section arise as of the date of the filing of the petition. At that time the bankrupt, having previously sold the real estate and paid the proceeds into the ward's estate, had no right, title, or interest in the real estate or its proceeds, and no creditor had acquired rights therein by attachment or otherwise to which the trustee could succeed. Mass. Trust Co. v. MacPherson (C. C. A.) 1 F.(2d) 769, 771; In re Snelling (D. C.) 202 F. 259; same case on appeal Clark v. Snelling (C. C. A.) 205 F. 240; Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275; Fairbanks v. Wills,

240 U. S. 642, 36 S. Ct. 466, 60 L. Ed. 841; Martin v. Commercial Nat. Bank, 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441; 4 Remington on Bankruptcy, pp. 271, 272, 284, 286, 296, 303.

[5] The transfer of the insurance policy, payable to the wife, to secure the repayment of the $1,000 borrowed from a friend, the policy having no cash surrender value then or afterwards, was not a preference. It in no way reduced the assets of the bankrupt's estate available to creditors. In re Simmons & Griffin (C. C. A.) 255 F. 521; Remington on Bankruptcy, §§ 1243, 1247, 1653. Neither do we regard the payment into the ward's estate of the $1,000 borrowed on the policy as creating a preference. The money was borrowed on the understanding that it was to be used to repay the ward's estate; it was on this understanding that the wife transferred her interest in the policy to secure the loan, and which made the loan possible. The bankrupt could not lawfully use the money for any other purpose and he never attempted to. It did not increase his assets available to creditors generally. The transaction, though different in form, was in substance and effect the same as though the friend had paid the $1,000 directly into the ward's estate. It is not claimed, if the transaction had taken this form, that the payment would have been a preference.

The decree of the District Court is affirmed, with costs to the appellee Packer, guardian.