## BANCO COMERCIAL DE PUERTO RICO v. BOSCANA.

### No. 3200.

Circuit Court of Appeals, First Circuit.

Dec. 28, 1938.

Henry G. Molina, of San Juan, P. R. (Hugh R. Francis, of San Juan, P. R., on the brief), for appellant.

Harry F. Besosa, of San Juan, P. R., for appellee.

Before BINGHAM and WILSON, Circuit Judges, and BREWSTER, District Judge.

WILSON, District Judge.

This is an appeal from a decree in equity by the Federal District Court of Puerto Rico on a complaint against the defendant brought by Vicente Boscana, Trustee in Bankruptcy in re Cintron & Martinez, S. en C., bankrupts.

The complaint alleges that the partnership of Cintron & Martinez to secure an indebtedness of the firm to Banco Comercial de Puerto Rico, hereinafter referred to as Banco Comercial, in the amount of $26,500, entered into a contract of sale and resale with the Banco Comercial on May 5, 1927, which contract purported to convey to the Banco Comercial 800,000 feet of lumber stored in the firm's warehouses at 20 Comercio Street in the city of Mayaguez in Puerto Rico as a pledge for the payment of said indebtedness.

The District Court held that the contract of sale and resale was not valid as against third parties, since it did not sufficiently describe and identify the lumber included in the deed or contract of conditional sale. There was no provision in the contract of conditional sale that the conditional vendees might sell the lumber and substitute other lumber therefor at their option, which should be subject to the lien, if any, thereby created. It was simply a bulk sale and a bulk description of 800,-000 feet of lumber.

Up to August 18, 1927, the indebtedness of Cintron & Martinez to the Banco Comercial was only reduced to $25,000. On September 3, 1927, a fire destroyed the mercantile establishment of Cintron & Martinez and all their merchandise, except lumber. The Banco Comercial, realizing that the deed of sale and resale of May 5, 1927, was defective in that it did not sufficiently describe the lumber covered by the contract of conditional sale, on September 8, 1927, within five days after the fire, called in a notary public for the purpose of marking and identifying the 800,000 feet of lumber claimed to be included in the conditional sale deed. A notarial document was made setting forth the piles of lumber making up a total of 800,000 feet and identified as the lumber covered by the contract of sale and resale entered into between the partnership of Cintron & Martinez on May 5, 1927; but Cintron himself testified that: "as to which of that lumber (referring to the lumber in their yard on September 8, 1927), was the 800,-000 feet sold or pledged, that, of course, could not be specified."

"The lumber that was localized and identified (on September 8) was not the same lumber we had in stock when we made the contract of sale and resale (May 5). It might have been possible that a part of it was the same. * * * I would be unable to estimate how much. We gave possession to the Banco * * * of the 800,000 feet of lumber on or about the 21st of September, 1927. They went there and took over the lumber."

The purpose of these transactions on September 8 and September 21 was to render effective the contract of sale and resale of May 5, 1927; but they could not be retroactive as to a trustee in bankruptcy or as to creditors of Cintron & Martinez, since if the contract of May 5 was insufficient as to third parties, the notarial documents would only be effective on the dates they were entered into. In any event, the purported delivery to the Banco Comercial on September 21 by a notarial deed of lumber identified on September 8 as the lumber claimed to have been included in the contract of May 5, 1927, clearly could only take effect as of September 21, 1927, and must have resulted in a voidable preference under the Bankruptcy Act § 60, 11 U.S.C.A. § 96, since it occurred within four months of the filing of the involuntary petition in bankruptcy against Cintron & Martinez on October 18, 1927.

The plaintiff Boscana in February, 1928, was appointed receiver of the assets of the partnership before their adjudication in bankruptcy on March 7, 1928, and was afterwards appointed trustee in bankruptcy. On receiving his appointment as receiver he made a demand for the lumber of the Banco Comercial delivered to it on September 21, 1927, which was refused.

Afterwards by stipulation between the parties all the lumber on hand in the yards of Cintron & Martinez on July 6, 1929, was sold at public auction, and the sale price accounted for to the court. The Federal Judge then determined the amount of lumber to be accounted for by the Banco Comercial and found the fair value of the lumber unaccounted for and decreed that the trustee in bankruptcy should have a claim against the Banco Comercial, which was then in process of liquidation.

The defendant filed 102 exceptions to the findings and rulings of the District Judge. This court might well refuse to consider such a bill of exceptions, which would involve a full consideration of such a volume of testimony as is presented in the bill of exceptions. However, in brief and argument, counsel for the trustee in bankruptcy relies on three points covered by the exceptions and which were the only points argued by counsel for the

Banco Comercial before this court, viz.: (1) That there was a voidable preference given the Banco Comercial on September 21, 1928; (2) that there was 251,283 feet of lumber delivered to the Banco Comercial on September 21 that was unaccounted for by the Banco Comercial; (3) that the case should have been transferred to the law side, since a money damage only was recovered.

■ (1) There was evidence from which the District Judge could find that the Banco Comercial had reasonable grounds to believe that Cintron & Martinez were insolvent on September 21, 1927, when it took over all the lumber in the yard of Cintron & Martinez. Upon the loss of their mercantile establishment and all their merchandise except the lumber on September 3, and upon refusal to pay the notes to the Banco Comercial, and realizing that the contract of sale and resale of May 5 did not sufficiently describe the lumber included therein, the Banco Comercial at once attempted to render it a valid conditional sale, and by a notarial document identified 800,000 feet of lumber left in the yard of Cintron & Martinez as the 800,000 feet included in the contract of sale and resale of May 5; but Cintron testified that the 800,000 feet identified on September 8, 1927, was not all of it the same as that referred to in the contract of sale and resale of May 5. Atherton et al. v. Beaman, 1 Cir., 264 F. 878; Massachusetts Trust Co. v. McPherson, 1 Cir., 1 F.2d 769, 772. It amounted to a new contract as to the lumber contained in the contract of May 5, 1927. The haste to remedy the defects in the contract of May 5 shows clearly that the Banco Comercial was endeavoring to make its conditional sale good in preference to the other creditors of Cintron & Martinez.

In his "conclusions of law" as set forth in his opinion, the District Judge said:

"It will be observed that this contract does not describe or identify the lumber alleged to have been sold and re-sold on that day. It would be utterly impossible for anyone to identify the lumber covered by this contract. There is no provision in the contract by which lumber sold was to be replaced or substituted by other lumber thereafter acquired. *It is impractical, if not impossible, to now determine the quantity of lumber delivered to Banco Comercial on September 21st which was on hand on May 5th. I am clearly of the opinion that* *this contract is not to be considered as a bona fide sale as that term is ordinarily understood. It is evident to my mind that the bank had some doubt as to the legality of the pledge of this lumber which it had prior to May 5th, and the contract of that date represents an effort on the part of the bank to make that pledge more effective.* If this was the purpose I think the contract failed to effect it. Had the lumber then on hand been better described and identified, the pledge would probably have been good, but unless the contract so provides, and in this case it does not, lumber subsequently acquired would not be affected. The testimony clearly shows that Cintron & Martinez continued the sale of lumber after May 5th as though the contract was non-existent. No accounting was made to the bank of any sales of lumber made after May 5th. The entire testimony sustains the conclusion which I have reached as to this contract." (Italics supplied.)

That there was a voidable preference by the transfer and delivery to the Banco Comercial by the notarial document of September 21, 1927, we think is clear, since it was done within a month of the filing of an involuntary petition in bankruptcy against Cintron & Martinez.

■ As to point (2), the District Judge found that on September 21 there was delivered to the Banco Comercial 800,000 feet of lumber, less 80,000 feet which had been sold by Cintron & Martinez between September 8 and September 21, or, in other words, there was delivered to the Banco Comercial on September 21 by the notarial deed, 720,000 feet of lumber.

In February, 1928, the receiver inventoried about one half of the lumber in the yard which showed that there was then in the yard approximately 493,348 feet; to this should be added the 80,000 feet sold by Cintron & Martinez and 46,568 feet admittedly sold by the Banco Comercial before it was enjoined from further sale by the court. There was then on hand approximately 619,916 feet, which at that time left 180,084 feet unaccounted for. In July, 1929, it was stipulated that the remaining lumber should be sold at public auction and there was a sale of all the rest of the lumber in the yard of Cintron & Martinez at public sale, which showed only 422,149 feet of lumber on hand in July, 1929, disclosing a shrinkage since February, 1928, of 71,199 feet, indicating that approximately 71,000 feet had been removed from the

yard since February, 1928, for which the Banco Comercial was responsible, as it was in its custody, which then left unaccounted for 251,283 feet, which the District Judge found to be worth at its fair market value $10,553.88. The District Judge found that, since the lumber in question had been sold by agreement of the parties, the plaintiff as trustee in bankruptcy had a claim against the Banco Comercial, which was in liquidation, of $10,553.88, and was also entitled to $1,518.78 on deposit with the clerk of the District Court, resulting from a sale of lumber by the Banco Comercial, and awarded a claim on behalf of the trustee against the Banco Comercial for the amount of $12,072.66, which includes the sum on deposit.

The third point raised by the counsel for the Banco Comercial we think is without merit. The issue of the validity of the pledge of sale and resale of May 5, 1927, and whether the contract of sale and resale of May 5, 1927, was null and void, were cognizable in equity, as well as a complaint to enforce provisions of the Bankruptcy Act and setting aside of a voidable preference. The rule is well settled that the equity court having taken jurisdiction, full relief will be given between the parties. Bureau of National Literature v. Sells et al., D.C., 211 F. 379; McGowan v. Parish, 237 U.S. 285, 35 S. Ct. 543, 59 L.Ed. 955; Smith v. American National Bank, 8 Cir., 89 F. 832, 839, 840; Krohn v. Williamson et al., C.C., 62 F. 869, 877; Williamson et al. v. Monroe, C. C., 101 F. 322; Chicago, M. & St. P. Ry. Co. of Idaho v. United States, 9 Cir., 218 F. 288.

The decree of the District Court is affirmed with costs.