**RINGLING TRUST & SAVINGS BANK et al.
v. WHITFIELD ESTATES, Inc.**

Circuit Court of Appeals, Fifth Circuit.
April 15, 1929.

No. 5399.

John H. Carter, of Sarasota, Fla. (Sawyer, Surrency, Carter & Keen, of Sarasota, Fla., on the brief), for appellants.

John C. Cooper, Jr., of Jacksonville, Fla. (Cooper, Knight, Adair, Cooper & Osborne, of Jacksonville, Fla., on the brief), for appellee.

Before WALKER and FOSTER, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. This is an appeal from a verdict and decree rejecting the demand that defendant be adjudged an involuntary bankrupt. The transaction out of which the alleged acts of bankruptcy arose was a trust deed executed, within four months preceding filing of the petition, in favor of one of the defendants' creditors, Adair Realty & Trust Company, which petitioners charge was done with the intent (1) to hinder and delay unsecured creditors; and (2) with the intent, while insolvent, to prefer the said Adair Realty & Trust Company to the extent of $1,600,000.

Originally there were three petitioners, to wit, Ringling Trust & Savings Bank, Southern Construction Engineers, Inc., and Cragin-Smith Advertising Company, whose bill was filed on March 23, 1927, and on April 22d following a fourth petitioner, Gardner-Noble Company, was allowed to intervene, and an amendment on behalf of all was permitted, in which the said acts of bankruptcy were reiterated in more detail. It was further alleged that "all of the creditors, * * * at the time of the filing of the original petition, were less than 12 in number." On May 6, 1927, Cragin-Smith Advertising Company was allowed to withdraw as a petitioning creditor. On August 6th defendant answered, admitting that Ringling Trust & Savings Bank was a creditor, but specifically denying that the other petitioners were such. It further denied that the unsecured creditors were less than 12, and set out a list of some 40 individuals and firms, with addresses, which it alleged were unsecured creditors, averred that the trust deed assailed was for the purpose of securing bonds in the sum of $1,600,000, representing bona fide obligations of the defendant, and further denied that the transfer was for the purpose of defrauding or preferring any creditor. It prayed that the issues be submitted to a jury.

The case was tried before a jury, and, after all the evidence was in, the court below, upon motion of the defendant, directed a

verdict in its favor, finding it "not guilty of the acts of bankruptcy alleged in the amended petition." A decree in accordance with this finding was entered, and this appeal was asked by the Ringling Trust & Savings Bank, Southern Construction Engineers, Gardner-Noble Company, and L. B. Whitfield, intervener. Subsequently L. B. Whitfield petitioned a severance and withdrew from the appeal. (We find in the record an answer by the defendant to the intervention of Whitfield, but no petition for that purpose by him, or order allowing the same by the court below.)

## Motion to Dismiss.

On May 5, 1928, petitioners filed their motion of appeal in the following form:

"Come now the petitioning creditors, Ringling Trust & Savings Bank, a corporation, Southern Construction Engineers, Inc., a corporation, Gardner-Noble Company, a corporation, and L. B. Whitfield, intervening creditor, and enter their appeal from the final judgment of this honorable court, rendered in the above cause on May 5, A. D., 1928, to the United States Circuit Court of Appeals for the Fifth Judicial Circuit, returnable before said court at New Orleans, in the state of Louisiana, on June 4, A. D. 1928. The said Whitfield Estates, Inc., a corporation, and Messrs. Cooper, Knight, Adair, Cooper & Osborne, its attorneys of record, will please take notice of said appeal, the same being taken under the provision of the Act of Congress approved January 31, A. D. 1928, entitled 'An act in reference to writs of error.' "

At the same time they filed a motion for writ of error, as follows:

"Come now the petitioning creditors, Ringling Trust & Savings Bank, a corporation, Southern Construction Engineers, Inc., a corporation, Gardner-Noble Company, a corporation, and L. B. Whitfield, intervening creditor in the above-stated cause, by their respective attorneys, and feeling themselves aggrieved by the final judgment of this honorable court entered against them in favor of the said Whitfield Estates, Inc., on the 5th day of May, A. D. 1928, hereby pray that a writ of error may be allowed them from the United States Circuit Court of Appeals for the Fifth Circuit, to the District Court of the United States for the Southern District of Florida, and be made returnable according to law and the practice of the court. And the said petitioners respectively present herewith their assignment of errors and prayer for reversal."

Accompanying this motion were nine assignments of error, which will be considered hereafter. Petitioners also filed their "petition for reversal" in the following words:

"Come now the petitioning creditors, Ringling Trust & Savings Bank, a corporation, Southern Engineers, Inc., a corporation, Gardner-Noble Company, a corporation, and L. B. Whitfield, intervening creditor, and pray for a reversal of the judgment of the District Court of the United States for the Southern District of Florida, in a certain matter therein pending in bankruptcy, in the matter of Whitfield Estates, Inc., bankrupt, which judgment was entered on the verdict of a jury on May 5, 1928, in said District Court."

On the same day the court signed and there was filed the following:

"This 5th day of May, 1928, came the plaintiff, the Ringling Bank & Trust Company, by its attorney, and filed herein and presented to the court its petition, praying for the allowance of a writ of error and assignments of error intended to be urged by it, praying also that a transcript of the record and papers upon which the judgment herein was rendered, duly authenticated, may be sent to the United States Circuit Court of Appeals for the Fifth Judicial Circuit and that such other and further proceedings may be had as may be proper in the premises. In consideration whereof, the court does allow the writ of error upon the defendant giving bond according to law in the sum of thirty thousand dollars ($30,000), which shall operate as a supersedeas bond."

A writ of error was immediately issued, addressed to the judge below, which bears the indorsement: "The within writ of error was this day served by filing the original with the clerk of said District Court, and also filing in said clerk's office a duly certified copy of same for the adverse party, and transmitting herewith the original record and proceedings as herein commanded." In the order allowing severance and withdrawal by L. B. Whitfield, "summons or other notice" of the appeal was waived. Citation on the writ of error was addressed to the defendant Whitfield Estates, which, together with return thereon, read as follows:

"To Whitfield Estates, Inc., a Corporation:

"You are hereby cited and admonished to be and appear at the United States Circuit Court of Appeals for the Fifth Circuit, to be held at the city of New Orleans in the state of Louisiana, thirty days from date hereof, pursuant to a writ of error filed in the clerk's office of the District Court of the United

States for the Southern District of Florida, at Tampa, Florida, wherein Ringling Trust & Savings Bank, a corporation, Southern Construction Engineers, Inc., a corporation, and Gardner-Noble Company, a corporation, petitioning creditors, are plaintiffs in error, and you are the defendant in error, to show cause, if any there be, why the judgment in the said writ of error mentioned should not be corrected, and speedy justice done to the parties in that behalf.

"Witness, the honorable William Howard Taft, Chief Justice of the United States of America, this the 5th day of May, A. D. 1928."

"Before the undersigned authority personally appeared this day John H. Carter, who, being duly sworn, says that he is attorney for the Ringling Trust & Savings Bank and other petitioning creditors mentioned in the annexed citation in the matter of Whitfield Estates, Inc., bankrupt, and as such attorney he did on May 26, 1928, at Sarasota aforesaid, mail this original and a copy thereof to Messrs. Cooper, Knight, Adair, Cooper & Osborne, Jacksonville, Florida, the attorneys for the bankrupt, and have received their written acknowledgment of the copy and of their having seen the original, under date of May 31, 1928."

Petitioners asked for and were allowed a supersedeas, the bond therefor being fixed in the sum of $30,000. The bond was executed with the United States Fidelity & Guaranty Company as surety, approved and filed May 24, 1928.

The bill of exceptions was presented, settled, signed, and filed on June 2, 1928, there being attached and made a part thereof the evidence, including exhibits, etc. Defendant filed in this court a motion to dismiss "the paper purporting to be a writ of error," for want of jurisdiction, because relief by that writ has been abolished. It also filed a motion to dismiss the appeal upon the grounds: (1) That this court has no jurisdiction; (2) that the law covering the perfection of an appeal had not been complied with; (3) that there is no petition for appeal; (4) that the appeal has not been allowed as required by law; (5) that no citation of appeal has been issued or served upon counsel or the appellee; (6) that Gardner-Noble Company did not join in the appeal, and no severance has been allowed eliminating it as a party appellant; (7) that neither the Southern Construction Engineers nor Gardner-Noble Company have given any security for the prosecution of their appeal; (8) that all of the petitioning creditors were not joined in the appeal; (9) that said appeal is otherwise informal, irregular, and insufficient; and (10) for other grounds and other reasons apparent upon the face of the record.

The recital above of steps taken by the petitioners for perfecting this appeal, we think, discloses the performance of every act necessary to properly bring the case up for our consideration. The Act of January 31, 1928, as amended on April 26th of that year (28 USCA §§ 861a, 861b), provides that the procedure on writs of error shall be applicable to appeals. In any event, we think the situation is saved by the Act of September 6, 1916 (39 Stat. 727 [28 USCA § 861]), providing that no writ of error or appeal shall be dismissed for matter of form, but the court shall consider the case under its proper category, if the proceedings taken are sufficient to sustain it under either form of relief. See Ana Maria Sugar Co. v. Quinones, 254 U. S. 245, 41 S. Ct. 110, 65 L. Ed. 246.

### On the Merits.

Petitioners have assigned some nine specifications of error, the first of which was to the admitting in evidence of certain contracts and mortgages, dated August 1, 1925, and September 1, 1926, by the defendant to the Adair Realty & Trust Company, upon the real and personal property of the defendant, securing sums aggregating $1,450,000, advanced to the defendant at different times. The second assignment was to the ruling of the court below that the bond mortgage of November 24, 1926, the basis of the two alleged acts of bankruptcy, was a lawful exchange and substitution for the prior contracts and mortgages mentioned in the first assignment, and therefore not a preference within the meaning of the bankruptcy law. The third and fourth assignments complain of the holding that the said contracts and mortgages constituted valid liens in favor of the Adair Realty & Trust Company, which, although never recorded, were superior to the rights of ordinary creditors. The fifth and sixth assignments were to the granting of the defendant's motion for a directed verdict, and the seventh and eighth were to portions of the charge of the court holding that petitioners had failed to show the mortgage was preferential, or made with intent to defraud.

The real issues presented upon this appeal, we think, are as to whether, first, the unrecorded contracts and mortgages created liens upon the properties of the defendant good as against general creditors; and, sec-

ond, whether the execution of the trust deed of November 24, 1926, amounted to a new hypothecation of its property for ordinary claims, or was merely an exchange and substitution of securities rendering it immune to attack as the basis for bankruptcy.

█ The facts as disclosed by this record are that during the month of December, 1924, the Adair Realty & Trust Company was employed as sales agent for the defendant company and intrusted with the exclusive handling of its properties, consisting of lots, home sites, lands, etc., on Sarasota Bay, in the state of Florida. On August 1, 1925, a contract was made by which the Adair Realty & Trust Company agreed to advance to defendant the sum of $1,000,000, the payment of which it promised to secure by a mortgage upon all its property, and in the same instrument, as further security, assigned all of the land purchase notes for lots already sold. The advances were to draw interest at 8 per cent. per annum, and Adair Realty & Trust Company was to receive the sum of $120,000 for services and expenses incident thereto. The mortgage was accordingly executed on October 6, 1925, covering all of the real property of defendant. Pursuant to this agreement, advances were made until it was found a larger credit was needed, and on September 1, 1926, a supplemental mortgage for $450,000 was executed, and the proceeds utilized by defendant in its business. None of these contracts were recorded.

On November 24, 1926, the advances made under the agreements, without calculating interest and without taking into account the commissions or compensation for services stipulated, amounted to $1,318,498.79. Thereupon the defendant, through its board of directors, having determined that the total outstanding indebtedness to Adair Realty & Trust Company amounted to more than $1,-500,000, for which its entire property stood mortgaged or pledged, decided to issue bonds secured by the same property, including real estate, purchase-money notes, contracts, etc., in the sum of $1,600,000, which the realty company in turn agreed to receive in settlement of its entire claims under the old contracts and mortgages, including principal, interest, commissions, etc. Accordingly, a trust deed with C. E. Holcomb as trustee, was executed and recorded, putting into effect the terms of said agreement and the bonds were delivered to the trustee.

Some effort was made to show that there were included in the total sum of the bond mortgage unsecured items on open account; but we think it reasonably clear that all the

sums, including principal advanced, interest, commissions, etc., were stipulated for and secured by the prior contracts and mortgages. Since there was an exchange or giving of bonds secured by mortgage and pledge of the same property, the parties we think had the right, in fixing the value of said bonds, to agree upon a reasonable discount consistent with the circumstances. In other words, it was an exchange of property, and not a present payment of money for the bonds.

█ The original petition in this case was filed on March 23, 1927, barely within four months of the execution and recording of the trust deed, on or about November 24, 1926. Section 3822 of the Revised General Statutes of Florida provides:

"No conveyance, transfer or mortgage of real property, or of any interest therein, nor any lease for a term of one year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; nor shall any such instrument made or executed by virtue of any power of attorney be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice unless the power of attorney be recorded before the accruing of the right of such creditor or subsequent purchaser."

The Supreme Court of Florida has had occasion to construe this statute as to its effect between persons holding unrecorded mortgages or conventional liens and general creditors. In the recent case of Southern Bank & Trust Co. v. Mathers, 90 Fla. 542, 106 So. 402, that court uses this language:

"Although recording statutes usually provide that an unrecorded mortgage is void as to creditors, the prevailing doctrine makes the mortgage on personalty as well as realty void only against those creditors who obtain a lien on the mortgaged property before the instrument is filed for record. Rogers v. Munnerlyn, 36 Fla. 591–600, 18 So. 669; Carolina Portland Cement Co. v. Roper, 68 Fla. 299, 67 So. 115; 11 C. J. 515. No lien having been obtained by the only other creditors shown by the record in this case, the above doctrine disposes of the controlling question in the case."

In a much earlier case (Rogers v. Munnerlyn, 36 Fla. 591, 18 So. 669) the same doctrine was announced. See, also, Carolina Portland Cement Co. v. Roper, 68 Fla. 299, 67 So. 115.

This court has also had occasion to consider the Florida statute in the case of

Stapylton v. Stockton, 91 F. 326, in a suit brought by the receiver of an insolvent national bank to set aside transfers of real and personal property made before the bank was placed in his hands, on the ground that they were made contrary to the provision of section 5242 of the Revised Statutes of the United States (12 USCA § 91). In dealing with the matter it was said:

"The fact that such deed was not recorded until the day the bank closed its doors did not entitle the general creditors of the bank to have it set aside, where there was no agreement to withhold it from record, and, under the laws of the state, it was good as a mortgage, as between the parties, though not recorded."

In the case of Carey v. Donohue, 240 U. S. 430, 36 S. Ct. 386, 60 L. Ed. 726, L. R. A. 1917A, 295, the Supreme Court of the United States had under consideration the effect of a similar provision in the Ohio General Code (section 8543) in relation to section 60a° of the Bankruptcy Act of 1898 (30 Stat. 562), as amended by the Act of Feb. 5, 1903 (32 Stat. 799), and section 60b (30 Stat. 562), as amended by the Act of June 25, 1910 (36 Stat. 842, c. 412; 11 USCA § 96(b), and through Justice Hughes as its organ held:

"The reference to the requirement for record in section 60 of the Bankruptcy Act is not to a requirement for the protection of bona fide purchasers without notice and who are outside the purview of the act, but to a requirement of record for protection of creditors and persons interested in the bankrupt's estate and in whose behalf or place the trustee is entitled to act; and where there is no such requirement and the transfer was made more than four months before the filing of the petition there can be no recovery under section 60. A provision in a state statute that instruments conveying real estate shall until filed for record be deemed fraudulent, only so far as relates to subsequent bona fide purchasers without knowledge or notice, as in section 8543, General Code of Ohio, is not a requirement that the instrument be recorded within the meaning of section 60 of the Bankruptcy Act."

We are clear that what was done in the present case, in the giving of mortgage bonds for the contracts and mortgages existing prior to November 24, 1926, was merely an exchange and substitution of securities. The Adair Realty & Trust Company held all of the property which was covered by the bond mortgage under prior agreements which were valid between itself and the Whitfield Estates, Inc., and the transaction complained of was merely a change in the form of the evidence representing that security, to wit, the giving of trust bonds, which we think became good against general creditors when the trust deed was recorded in November, 1926. See Clark v. Iselin, 21 Wall. 360, 378, 22 L. Ed. 568; In re MacKinnon Mfg. Co. (C. C. A.) 24 F.(2d) 156, and authorities therein cited; Sawyer v. Turpin, 91 U. S. 121, 23 L. Ed. 235; Cook v. Tullis, 18 Wall. 332, 21 L. Ed. 933.

Considerable stress °is laid by appellant upon the provisions of section 47a of the Bankruptcy Act, as amended by the Act of 1910 (11 USCA & 75(a), which provides in substance that a trustee shall be vested with all of the rights, remedies, and powers of a creditor holding a lien through legal or equitable proceedings. However, that statute did not intend to vest in the trustee any greater rights than could have been enforced by a creditor possessing such advantages at the date of bankruptcy. It seems reasonably clear that on March 23, 1927, when the petition herein was filed, a creditor in either class, who had become such after the recording of the bond mortgage, could not have prevailed as against the claims of the Adair Realty & Trust Company, according to the settled jurisprudence of the state of Florida. Anderson v. Oklahoma Moline Plow Co. (C. C. A.) 246 F. 743; Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275.

Appellants further complain of provisions of the trust deed, which permitted the defendant to utilize the proceeds of purchase-money notes for the payment of operating expenses, etc., as indicating a fraudulent purpose to cover up the property of the defendant, and to place it beyond the reach of ordinary creditors, while at the same time leaving it within the control of Whitfield Estates, Inc. However, we think the record discloses that the nature of defendant's business was such that, in order to realize the best results for the beneficiary under the trust deed, it was necessary that expenditures in the way of improvements and the employment of persons for the prosecution of the sale of its property were necessary. We do not find that the contract either contemplated or in the execution went beyond these purposes, and nothing justifying the contention that this provision had the effect of either vitiating the contract or of disclosing a fraudulent purpose, in so far as general creditors were concerned.

Our conclusion is that the judgment appealed from is correct, and it is therefore affirmed.