## In re MYERS MOTOR SALES CO.
### No. 1786.

District Court, S. D. Texas, Galveston Division. Oct. 5, 1932.

McDonald & Wayman, of Galveston, Tex., for petitioners W. L. Moody & Co.

Levy & Levy, of Galveston, Tex., for trustee T. J. Holbrook.

KENNERLY, District Judge.

Myers Motor Sales Company, a corporation, was adjudicated a bankrupt upon an involuntary petition in bankruptcy, filed against it June 3, 1932, by creditors. July 14, 1932, petitioners W. L. Moody & Co., a partnership, filed with the referee in bankruptcy its petition to reclaim four Chrysler automobiles, or the proceeds of the sale thereof, claimed by them, and then in the possession of the trustee. The trustee combated the petition, and, the referee having held for, and awarded the automobiles to, the trustee, petitioners bring their petition to review the referee's action, and this is a hearing thereon.

The referee's findings of facts are not complained of by petitioners, and will therefore be adopted as the court's findings of fact. Such findings are:

"That Myers Motor Sales Company, Bankrupt, purchased the four automobiles in question from A. C. Burton & Co., wholesale distributors of Houston, Tex. Upon delivery of each of the cars by A. C. Burton & Co. to Myers Motor Sales Company, usually at Houston, Tex., Myers Motor Sales Company gave to A. C. Burton & Co. its check on the Hutchings-Sealy National Bank of Galveston, Tex., for the invoice price thereof. Myers Motor Sales Company brought the cars to Galveston and placed them on the floor of their showroom, daily exposing them for sale in the usual and customary manner of such business. After Myers Motor Sales Company purchased the automobiles in the manner described, and from one to two or three days after its checks had been issued to A. C. Burton & Co., it borrowed money from W. L. Moody & Co. and deposited same to its (bankrupt's) credit and account in the Hutchings-Sealy National Bank of Galveston, such funds thereby becoming mingled with other funds there deposited in its general checking account. In each case, W. L. Moody & Co. gave Myers Motor Sales Company a cashier's check for the amount loaned. Some of these cashier's checks were for amounts in excess of the cost price of the particular automobiles which petitioners alleged they were intended to cover. W. L. Moody & Co. had no dealings whatsoever with A. C. Burton & Co.

"Each time such funds were loaned to Myers Motor Sales Company by the petitioners, bankrupt executed and delivered to petitioners a bill of sale to the automobiles there-

in described, and also and at the same time a promissory collateral note creating a lien against such automobile, said note bearing 7 per cent. interest. The notes and bills of sale in all four cases are the same as to form and content with exception of dates, amounts, and descriptions of the automobiles; reference is made to the petition, to which they are attached as exhibits.[1]

---

[1] The form of bill of sale is as follows:

"That the ownership of the following described vehicle is hereby transferred this —— day of —— 193— by the undersigned to W. L. Moody & Co. for and in consideration of One Dollar and other valuable consideration, and this vehicle has been duly registered in this State for this current calendar year. Old License Number —— New License Number —— Engine Number CP-2626. Name, Model and Year made Chrysler Eight Coupé. Transferee's name in full W. L. Moody & Co. Transferee's correct address in full 21st & Ave D.

"Before me, the undersigned authority, personally appeared the vendor of the vehicle described above, and being duly sworn, deposes and upon oath states that the vehicle described is hereby transferred to the transferee named above.

"Vendor: Myers-Motor Sales Company,
"W. J. Weber, Secy."

The form of note is as follows:

"Galveston, Texas, April 2nd 1932. (Due: Demand. $1,336.00)

"Demand after date I, we or either of us promise to pay to the order of W. L. Moody & Company (Unincorporated) Bankers, of Galveston, Thirteen Hundred Thirty Six and no/100 Dollars, for value received, negotiable and payable without defalcation or discount, at the office of said Bank, in the City of Galveston, Texas, with interest at the rate of 7 per cent per annum from date until paid.

"And in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, or suit is brought on the same, then an additional amount of ten per cent on the principal and interest of this note shall be added to the same as attorney's fees.

"And having deposited or pledged with W. L. Moody & Company, Bankers (Unincorporated), of Galveston, as collateral security for the prompt payment at maturity of this note, and of any other liability or liabilities of the undersigned, as principal debtor or otherwise, due or to become due, or of any that may be hereafter contracted with the holder of this note, the following property, viz.: Chrysler Eight Coupé R. S. 6 Wire Wheels Motor No. CP-2626 Serial No. 75251162 the estimated market value of which is now $1,945.00. And the undersigned also hereby giving to the said W. L. Moody & Company a lien for the amount of all the said liabilities upon all the properties or securities at any time given unto or left in the possession or custody of the said W. L. Moody & Company by or for the undersigned for safe-keeping or otherwise, or in which the undersigned has (or have) any interest, and also upon the balance of the deposit account of the undersigned with the said W. L. Moody & Company existing from time to time.

"Now, it is hereby agreed that the holder of this note shall not be liable for failure to collect the said collaterals, nor for failure to present or protest the same, or to give notice or sue thereon; and if this note, or any other liability of the undersigned, as before described, be not properly paid at maturity, the holder of this promissory note is hereby authorized and empowered, at any time or times thereafter, without further reference or notice to the undersigned, to sell, either at public or private sale, through a broker or otherwise, the whole or any part of said collaterals, or additions.

to or substitutes therefor, with the right of becoming the purchaser and absolute owner thereof, free of all trusts and claims, should such sale be made through a broker or be public; and when said collaterals are sold, to transfer, assign and deliver up the same; and after deducting all legal and all other costs, attorney's fees and expenses for collection, sale and delivery, including a commission of two and one-half per cent on the gross amount of the proceeds of such sale, to apply the residue of the proceeds of such sale or sales so made to pay any, either or all of said liabilities, as said holder shall deem proper, returning the overplus, if any, to the undersigned and should any deficiencies occur, the undersigned promises and agrees to pay the same to the holder hereof on demand.

Furthermore, it is agreed that so often as the market price of these and subsequent deposited collateral securities shall, before maturity of this note, or any other liability of the undersigned to the holder hereof, as above described, in the opinion of the holder hereof, fall below the present market value of said securities, the undersigned will, on demand, within twenty-four hours thereafter, deposit with the holder additional security, to be approved by said holder, sufficient to cover the amount of such depreciation in value, and that, in default thereof, this note, and any other liability of the undersigned to the holder hereof, as above described, shall at the election of the holder hereof, become instantly due and payable, precisely as though this note and any other such obligation had actually matured, and all the foregoing rights to sell and transfer collaterals shall at once be exercisable.

"Myers Motor Sales Company,
"By W. J. Weber, Secy."

---

"At no time prior to the seizure hereinafter mentioned did W. L. Moody & Co. have possession or control of the cars involved. Myers Motor Sales Company continued in possession of the cars, offering them for sale daily at its showroom in the regular course of its business, for cash or upon such other terms as Myers Motor Sales Company should decide upon. That, if either of said cars had been sold, Myers Motor Sales Company would have made out a bill of sale and application for transfer as required by the laws of the state of Texas, and would have made oath that it (Myers Motor Sales Company) was the owner of such automobile, and the bill of sale would have been made direct from Myers Motor Sales Company to the purchaser. W. L. Moody & Co. had nothing whatever to do with the sales of said cars, and it was not necessary to procure a bill of sale from W. L. Moody & Co., either to Myers Motor Sales Company or to the buyer, before such sales could be consummated. Neither the bills of sale nor the collateral promissory notes were filed, registered, or recorded.

"Two or three days prior to the filing of the petition in bankruptcy of Myers Motor Sales Company, and while Alvin Myers, president of Myers Motor Sales Company, was out of the city, and without his knowledge or consent, petitioners, without process

of law, seized and removed said four automobiles from bankrupt's premises.

"That upon the request of the trustee and referee and after an informal hearing in the referee's office, with Frank S. Anderson, representing W. L. Moody & Co., and Messrs. Levy & Levy, representing the petitioning creditors, petitioners, acting upon the advice of their said attorney, Frank S. Anderson, voluntarily and without any order of court, agreed to and did in fact surrender and deliver over said automobiles to the trustee and notified the referee that they claimed no preferred right, title, or interest in and to the same.

"That after the voluntary surrender of said property, and on application of the trustee, the sale thereof was advertised and published, to enjoin which and for the reclamation of said automobiles, or in the alternative for the amount realized by their sale, W. L. Moody & Co. filed their petition herein."

From the facts so found, the referee concludes:

"(a) That title to the four automobiles in question passed directly from A. C. Burton & Co. to Myers·Motor Sales Company.

"(b) That in each case the bill of sale and collateral promissory note executed to secure the loan made to Myers Motor Sales Company by W. L. Moody & Co. constitute a chattel mortgage on the particular automobile described therein.

"(c) That such mortgage, in each case, being on merchandise daily exposed for sale in the regular course of Bankrupt's business, was and is void under article 4000, R. C. S. Tex. 1925."

While not entirely free from doubt, the petition for review is probably sufficient (and will be so regarded) to call for a review of the referee's decision.

■ 1. Article 5489[2] of the Texas Revised Civil Statutes of 1925 provides that all reservations of title to, or property in, chattels as security for the purchase money thereof, shall be held to be chattel mortgages, etc. Even if the title to the automobiles passed to petitioners, either by reason of the bank-

rupt borrowing money from them to pay therefor, or by the execution by the bankrupt of the so-called bill of sale to them (and I do not determine that question), the transaction between the parties, considered as a whole, is a mortgage under such article. Consolidated Garage Company v. Chambers, 111 Tex. 293, 231 S. W. 1072. If such title did not pass to petitioners, the transaction is a mortgage.

■ Even though not registered as required by article 5490[3] of the Texas Revised Civil Statutes of 1925, such mortgage was good as between the parties, but not as against a lien creditor. Bowen v. Lansing Wagon Works, 91 Tex. 385, 388, 43 S. W. 872; Commercial Credit Co. v. Schlegel-Storseth Motor Co. (Tex. Com. App.) 23 S.W.(2d) 702, 703. The record before me does not show that there were lien creditors.

Such was the status of the parties prior to the filing of the petition in bankruptcy.

2. The mortgage not having been registered, the question then arises of what, if any, rights the trustee in bankruptcy acquired as against petitioners. Prior to the amendment of 1910, the trustee would have acquired none. York Manufacturing Co. v. Cassel, 201 U. S. 344, 345, 26 S. Ct. 481, 50 L. Ed. 782, 783.

■ In discussing the effect of the amendment of 1910 (36 Stat. 838), Mr. Collier in his work on Bankruptcy (page 1054, 13th Ed.) uses this language: "The purpose of the amendment was to give to the trustee the rights of a lien or judgment creditor, enabling him to protect general creditors from unrecorded liens, unlawful transfers, spurious claims and other dissipations of the assets of the estate, which a lien or judgment creditor might have prevented had bankruptcy not intervened. The class of cases, unprovided for by the original act, and intended to be

---

[2] Article 5489 of the Texas Revised Civil Statutes of 1925 reads as follows: "All reservation of title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. Nothing in this law shall be construed to contravene the landlord and tenant law."

[3] Article 5490 of the Texas Revised Civil Statutes of 1925 reads in part as follows: "Every chattel mortgage, deed of trust, or other instrument of writing, intended to operate as a mortgage, or lien upon personal property, and every transfer thereof which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged, pledged, or affected by such instrument, shall be absolutely void as against the creditors of the mortgagor or person making same, as against subsequent purchasers and mortgagees or lien holders in good faith, unless such instrument, or a true copy thereof, shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated, or if the mortgagor or person making the same be a resident of this State, then, of the county of which he shall at that time be a resident," etc.

512

reached by the amendment, was that in which no creditors had acquired liens by legal or equitable proceedings and to vest in the trustee for the interest of all creditors the potential rights of creditors potential with such liens. The language is readily susceptible of this construction. It aptly refers to such rights, remedies and powers as a creditor holding a lien is entitled to under the law, rather than to the rights, remedies and powers of a creditor who had actually fastened a lien on the property of the bankrupt estate. The amendment vests in the trustee, by operation of law, a lien equivalent in all respects to that acquired upon the property coming into the custody of the trustee, by virtue of legal or equitable proceedings instituted against the bankrupt by a creditor, but does not necessarily give him the status of a purchaser without notice."

I think this is the true rule, and that, by the filing of the petition in bankruptcy, the trustee acquired a lien on such automobiles superior to the claim of petitioners. Bailey v. Baker Ice Mach. Co., 239 U. S. 268, 275, 36 S. Ct. 50, 60 L. Ed. 275, 286; Fairbanks v. Wills, 240 U. S. 642, 645, 36 S. Ct. 466, 60 L. Ed. 841, 845; Moore v. Bay, 284 U. S. 4, 52 S. Ct. 3, 76 L. Ed. 133, 76 A. L. R. 1198.

It is not necessary to discuss other questions raised. The decree of the referee is affirmed.