In re PAGLIARO.

No. 39166.

United States District Court
N. D. California, S. D.
July 23, 1951.

Shapro & Rothschild, San Francisco, Cal., for trustee.

Moran & Millsbaugh and Phillip W. Millsbaugh, all of Richmond, Cal., for petitioner C. N. Golden.

Harry Gonick, Oakland, Cal., for bankrupt.

MURPHY, District Judge.

One Angelo Pagliaro unsuccessfully operated a restaurant in Berkeley, California. Upon filing a voluntary petition in Bankruptcy he was adjudged bankrupt.

At the time he filed his petition, the bankrupt possessed the furniture, fixtures and equipment of the restaurant which he was purchasing from C. N. Golden pursuant to the terms of a conditional sales contract.

Following the filing of the petition the bankrupt turned the property over to Golden who sold it, for $4,750. At the time the property was given to Golden the balance due on the purchase price was $3,676, the difference between the balance due Golden at the time of the filing of the Petition and the amount which he obtained on the resale being the sum of $1,074.

Golden's position is that although 60 days elapsed since the adjudication in Bankruptcy, the trustee had not elected to assume the conditional sales contract. He further contends that he made no money from the sale of the personal property and seeks dismissal of trustee's petition. He further alleged in his answer that under the laws of California he had the right to declare the contract at an end and to retain all payments as liquidated damages.

The referee in Bankruptcy ordered Golden to turn over to the trustee the sum of $599, which he determined to be the reasonable value of the personal property, represented by its resale price, less the balance due Golden under the Conditional Sales Contract and less the brokerage commission paid by Golden on the sale.

The Conditional Sales Contract dated July 7, 1950 was introduced into evidence as Golden's Exhibit No. 1. Therein Golden is denominated the vendor, and the bankrupt Pagliaro is buyer or purchaser. The contract called for the payment of $4,776 payable at $100 a week, title to be reserved in the vendor until payment was made in full, at which time the vendor would request a transfer of lease to the purchaser. The customary provision regarding immediate possession upon default and retention of all payments prior thereto as liquidated damages is also therein contained. There was no provision that time was of the essence.

Golden received no payments subsequent to September 5, 1950, the date of the filing of the Petition in Bankruptcy. Approximately $3,600 was still due and owing as of that date. The bankrupt continued in possession of the property until October 21, 1950, at which time Golden repossessed the premises pursuant to an instrument in writing and operated the business for about 30 days at the end of which he sold the business to one Miller for $4,750, $2,000 in cash, the balance to be paid in installments.

Golden contended before the referee that he first learned of the Bankruptcy proceedings upon receipt by him of the Notice of the First Meeting of Creditors which was mailed by the Court on September 13, 1950. He further urged that he held the restaurant premises under a lease from one McClellan which ran for 3 years at a rental of $86 per month, which the bankrupt had been paying in addition to the $100 a week payment on the Conditional Sales Contract.

The referee made findings, in accordance with the facts as set forth herein, the most pertinent of which is that the trustee is entitled to recover from Golden the difference between the balance due on the Conditional Sales Contract at the time of the filing of the petition, i. e., $1,074, less a brokerage fee paid by Golden in the amount of $475, thus leaving a net profit to Golden out of the resale of the property without leave of Court in the amount of $599.

The findings are based upon the principle that a seller in a Conditional Sales Contract is nothing more that a secured creditor whose interest is essen-

tially in obtaining the price. As stated in Walker v. Houston, 215 Cal. 742, 746, 12 P.2d 952, 953, 87 A.L.R. 937: "there is no doubt but that the title of the conditional seller is an 'incident' of the obligation to pay the balance of the purchase price, which is discharged upon a tender of said balance. * * * The title is reserved for security only. The buyer has the full right of possession and use unless he defaults, and may secure title by performance of his obligation without any further consent by the seller. The sole interest of the seller is in the receipt of the price, and his reserved title cannot be used for any other purpose. * * *"

■■ In California a conditional sales contract of the kind here dealt with is valid without recording. Upon the buyer's default the vendor may at his option repossess the goods and retain all prior paid installments on the purchase price. Consent by the conditional vendee to the retaking of possession by the vendor upon default is implied in the very form of the contract itself, Goldberg v. List, 11 Cal.2d 389, at page 393, 79 P.2d 1087, 116 A.L.R. 900. Repossession alone, however, does not necessarily terminate the contract and if there is no agreement to the contrary, nor unreasonable delay, the defaulting vendee may still complete the purchase and perfect his right to receive the property by paying the balance due. "This is upon the theory that a mere delay in the payment of money is ordinarily 'capable of exact and entire compensation,' and will not, unless time has expressly been made of the essence of the obligation, bar the right of the party in default to tender payment, with interest, at a later date, and demand performance of whatever obligation was due him upon such payment", Liver v. Mills, 155 Cal. 459, 101 P. 299, 300. In the immediate case nearly two months elapsed between initial default and repossession. Another month passed before the conditional seller in possession elected to sell the property. Even without the written agreement purporting to terminate the contract, it is clear that as between the buyer and seller the seller acted reasonably under the circumstances and if the condi-

tional buyer were before this Court he would have no claim to the proceeds of the resale.

■■ We are not directly concerned, however, with an evaluation of the rights of the parties to the original contract, but rather with the question as to whether the conditional seller was justified in extracting the property from the custody of the bankruptcy Court without its assent and whether he may retain the proceeds from resale. The general rule that upon the filing of the petition the right, title, ownership and possession of the bankrupt as to his non-exempt property passes to the bankruptcy Court applies with equal force to the subject matter of a conditional sales contract. The contract is unaffected by the bankruptcy of the vendee and the vendor may reclaim the property unless the trustee elects to continue the contract within the sixty (60) days provided by Section 70, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. b. But the conditional vendor may not, after the petition in bankruptcy is filed, take the property from the bankrupt without the permission of the bankruptcy Court or through a reclamation proceeding. See Matter of E. L. Trask & Co., Inc. [Ref., Mass] 18 Am. Bankr.Rep., N.S., 736; In re Smith, D.C., 18 F.2d 797; Collier on Bankruptcy, 14th Ed. § 70a [5]. Beneficial ownership and the right to acquire legal title may be of considerable value, and the trustee cannot be deprived of such "assets" by the unauthorized act of the conditional seller. It follows then that Golden, the conditional seller, had no right, either alone or pursuant to the meaningless consent of the bankrupt, to violate the custodia legis and repossess himself of the property here in issue. His conduct amounted to a technical conversion of the property. The trustee could have brought an action to recover possession or, in the event of resale, could have claimed the proceeds; but from September 5, 1950 to December 29, 1950, he did nothing, and the payments remained in default.

■■ Section 70, sub. b reads in material part as follows: "Within *sixty days* after the adjudication, the trustee shall as-

sume or reject any executory contract, including unexpired leases of real property: *Provided*, however, That the court may for cause shown extend or reduce such period of time. *Any such contract or lease not assumed or rejected within such time*, whether or not a trustee has been appointed or has qualified, *shall be deemed to be rejected.* A trustee shall file, within sixty days after adjudication, a statement under oath showing which, if any, of the contracts of the bankrupt are executory in whole or in part, including unexpired leases of real property, and which, if any, have been rejected by the trustee * * *." (Emphasis added.) Applied to our problem, the section provides that although the trustee has the right to acquire title for the benefit of creditors, he is not obliged so to do. He may reject it as burdensome to the estate. Since the trustee did neither here, he seeks to avoid the force of the provision by arguing that this is not an executory contract within the contemplation of Section 70, sub. b. He construes that section to apply only to instances where performance in future is owing on both sides. No authority was cited and none can be found which applies that restricted construction to the section. Collier, in his work on Bankruptcy, footnotes his statement that "the vendor may reclaim the property unless the trustee elects to complete the contract" to the appropriate paragraphs on executory contracts, 14th Ed., p. 1074 n. 31. Long before 70, sub. b was promulgated the right of a trustee to adopt or reject a conditional sales contract was recognized. See Bailey v. Baker Ice Mach. Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275; In re Wegman Piano Co., D.C., 221 F. 128; Matter of Terrell, 8 Cir., 246 F. 743; In re Burgermeister Brewing Co., 7 Cir., 84 F.2d 388; In re White Plains Ice Service, Inc., 2 Cir., 109 F.2d 913; In re Halferty, 7 Cir., 136 F.2d 640; Blakely v. Hutchings, 230 Mich. 43, 203 N.W. 86; 6 Am.Jur., p. 1133. The assumption of a contract entails the assumption of liabilities constituting expenses of administration and therefore a first charge upon the bankrupts assets. It would be contrary to the spirit of the Act to force upon the creditors what might well be a white ele-

phant, or, conversely, to permit a summary forfeiture of what might be a valuable right. On the other hand, it is consistent with the Act to invest the trustee with power to assume or reject the contract as he, in his judicious discretion, may deem most conducive to the prospective benefit of the estate. If, as happened here, 60 days elapse without the trustee having made his election, the contract is deemed rejected, and the conditional seller may reclaim the property or, preferring to make the sale absolute, file a claim for the balance owing.

We thus are confronted, in this case, with the interesting spectacle of a trustee attempting to truncate his power of disaffirmance in order to force reimbursement. This he cannot do. Nor can he extend the time within which adoption may be made. Although the action of the conditional seller was irregular, it is the conclusion of this Court that the trustee is barred from exploiting that technical wrong. He is conclusively presumed to have disaffirmed the contract and hence has no enforceable claim to the proceeds of resale.

The order of the referee is reversed.